UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

KWAME KILPATRICK, ET AL.,

    Defendants.
_____/

Case No. 10-20403

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING GOVERNMENT'S MOTION *IN LIMINE* FOR PRETRIAL DETERMINATION OF AUTHENTICITY OF CERTAIN EVIDENCE [92]**

This matter came before the Court at an August 6, 2012 hearing on the government's motion *in limine* for a pretrial determination of authenticity of certain evidence [92]. Defendant Bernard Kilpatrick filed a response [138], joined by Defendants Bobby Ferguson [139] and Kwame Kilpatrick [140].

The government seeks a preliminary pretrial ruling on the authenticity[1] of relevant text message exchanges pursuant to Federal Rule of Evidence 104(a) and (b). The evidence at issue is comprised of text messages exchanged between and among Defendants and others on two-way pager devices leased to Defendants from Sky Tel. The government persuasively argues that a pretrial ruling on their authenticity will streamline the presentation of evidence at trial and avoid unnecessary delays for the jury. Based on the government's prima facie showing that the text message exchanges are what the

---

[1]In its Reply, the government informs the Court that the motion was erroneously captioned as seeking a pretrial determination on admissibility and it should have said authenticity of certain evidence. (Gov't Reply at 1, n.1.)

government purports them to be, the threshold for a pretrial determination as to authenticity under Federal Rule of Evidence 901 is satisfied.

The government's motion for a preliminary pretrial determination as to the authenticity of relevant text message exchanges is GRANTED WITHOUT PREJUDICE to specific hearsay objections that Defendants may raise at trial regarding particular text messages. Moreover, because none of the Defendants have objected to the government's proposed method of displaying the text message exchanges to the jury – in WordPerfect format, without any alteration to the content of the messages – this part of the government's motion is also GRANTED.

**A. Background**

The government alleges that, in carrying out the charged racketeering conspiracy and assorted underlying offenses, Defendants frequently communicated with one another and other coconspirators, both charged and uncharged, via two-way pager devices. The pager devices were leased by the City of Detroit from a national paging company, SkyTel. The City provided pagers to certain authorized users, including Defendants Kwame Kilpatrick and Bernard Kilpatrick, and high-level appointees of the Mayor of Detroit. Defendant Bobby Ferguson obtained a SkyTel pager device at about the same time as the other Defendants. Defendant Victor Mercado did not have a SkyTel two-way device, but he did communicate with the other Defendants using his own handheld device.

Each SkyTel user was assigned a unique personal identification number (PIN) corresponding to the pager he or she used; these PINS were comparable to telephone numbers and were not duplicated. Defendants had hundreds of thousands of text message communications with one another and other parties, including unindicted coconspirators,

on the SkyTel pagers from 2002 to 2005.

SkyTel maintained a log on its server of all text messages sent and received from every individual PIN assigned to a SkyTel pager. The log contained, among other information, the date and time when each message was sent or received; the PIN of the pager the subject pager was communicating with; and the contents of each message. The log was used by SkyTel for its own business purposes, including quality control, analytics, and trouble-shooting. The text messages themselves were stored on the server in a manner that made it impossible to alter or edit the contents of any given text. (Gov't Ex. A, Oshinsky Decl. ¶ 9.)

During the course of the government's investigation, it served two search warrants on SkyTel. When SkyTel received the search warrants, Stephen Oshinsky, the custodian of records at the time, retrieved the text messages sent to or from each PIN identified in the warrants. In order to do so, Oshinsky logged onto the SkyTel server using a secure password, then searched the server for the requested text messages by PIN and date range. The SkyTel software retrieved the log of each PIN, including the contents of each text, and exported the results onto an Excel spreadsheet. Oshinsky then saved the data on the Excel spreadsheet on two compact discs, which he provided to the FBI. (*Id.* at ¶ 12.) The SkyTel spreadsheet contains all text messages sent or received by each unique PIN assigned to Defendants during the time period requested. The government provided the SkyTel spreadsheet in its entirety to the defense over a year ago, on February 24, 2011.

Because the vast majority of text messages in the SkyTel spreadsheet are not relevant to the charges in this case and because the spreadsheet displays the results in

a manner that would needlessly confuse the jury, the government seeks to introduce as exhibits exchanges from the SkyTel spreadsheet in WordPerfect format so as to make the relevant text messages more readable and easily understood by the jury. Of the nearly 370,000 text messages obtained by the search warrants, the government expects to display only a tiny fraction of these from the SkyTel spreadsheet.

### B. Analysis

The government argues that it can authenticate the text messages under Federal Rule of Evidence 901 by demonstrating that the text messages that will be introduced at trial are in fact text messages transmitted to or from Defendants on their SkyTel pagers. This Court agrees with the government. Despite Defendant Bernard Kilpatrick's arguments to the contrary, Rule 901 does not require that evidence be authenticated by a witness, and a trial court may "make a preliminary determination as to authentication [without witness testimony], admit the evidence conditionally under Rule 104(b), and then allow the jurors to be the final arbiters of whether [the evidence] was actually authenticated," i.e., that the evidence was what the proponent maintained it to be. *United States v. Puttick*, 288 F. App'x 242, 246 (6th Cir. 2008). In *Puttick*, the Sixth Circuit found the reasoning in decisions from the Second and Fourth Circuits, reaching the same conclusion on this issue, "to be compelling and comports with the language of Rule 901(a)." *Id.* at 247 (discussing *United States v. Sliker*, 751 F.2d 477, 499-500 (2d Cir. 1984), and *United States v. Branch*, 970 F.2d 1368, 1371 (4th Cir. 1992)).

#### 1. Fed. R. Evid. 901

The foundational "requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the

4

matter in question is what its proponent claims." *United States v. Crosgrove*, 637 F.3d 646, 658 (6th Cir. 2011). Rejecting an argument that the government failed to properly authenticate a letter from an insurance company with live testimony from someone employed by that company, the Sixth Circuit observed that the argument "ignores that 'proponents of exhibits may also prove their authenticity with circumstantial evidence.'" *Id.* at 658 (quoting 1-8 Weinstein's Evidence Manual § 8.01).

"Determination whether evidence is authentic is governed by Rule 104(b) of the Federal Rules of Evidence. The district court must first determine whether the proponent of the evidence 'has offered a satisfactory foundation from which the jury could reasonably find that the evidence is authentic.'" *Forward Magazine, Inc. v. OverDrive, Inc.*, No. 1:10-cv-1144, 2011 WL 5169384, *3 (W.D. Mich. Oct. 31, 2011) (quoting *Branch*, 970 F.2d at 1370)). "Because authentication 'is essentially a question of conditional relevancy,' the jury will ultimately resolve whether the evidence admitted for its consideration is what the proponent claims." *Id.* (quoting *Branch*, 970 F.2d at 1370-71). "Thus, a party seeking to admit an exhibit need only make a *prima facie* showing that it is what the proponent claims it to be." *Id.* (citing Fed. R. Evid. 901(a)).

**2. The Government Has Made a Prima Facie Showing of Authenticity**

Here, the Court has more than enough information to make a preliminary determination of authenticity.

First, it has the sworn declaration of then-custodian of the SkyTel records, Stephen Oshinsky, that the text messages are in fact text messages exchanged between SkyTel pagers with particular PINs. This provides sufficient information for the Court to make a preliminary determination of authenticity. *See United States v. Hunter*, 266 F. App'x 619,

621 (9th Cir. 2008) (holding that "the government properly authenticated the text messages [at issue on appeal] by using the testimonies of the senior manager of the pagers' service provider, the FBI agent who compiled the records, and [the defendant's] coconspirators."). In his sworn declaration, Mr. Oshinsky explains that each text message sent to or from a particular SkyTel PIN is automatically stored on SkyTel's server and that SkyTel's server does not allow the original text message to be edited in any way. *See* Fed. R. Evid. 901(b)(9) (providing that "[e]vidence describing a process or system and showing that it produces an accurate result" as an example of evidence that satisfies Rule 901(a)'s authentication requirement). *See also Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 549 (D. Md. 2007) (observing that Rule 901(b)(9) is "particularly useful in authenticating electronic evidence stored in or generated by computers."). Mr. Oshinsky also explains that he retrieved the text messages in response to the government's search warrants, that the SkyTel software generated the SkyTel spreadsheet, and that he saved that data on two compact discs which he then provided directly to the FBI. *See United States v. Simms*, 351 F. App'x 64, 65-66, 68 (6th Cir. 2009) (rejecting the defendant's argument that voice recording evidence was not properly authenticated because the captain who copied the CD containing those recordings did not testify and finding the foundation was sufficient where sheriff department computer specialist testified about the process how voice recordings were retrieved from the jail's computer server, saved on a CD, and then provided to law enforcement).

Defendant's argument that actual testimony is required for the preliminary pretrial evidentiary ruling on authenticity is rejected. The Confrontation Clause is not implicated when the Court makes a preliminary authentication ruling under Rule 104. *See United*

*States v. Matlock*, 415 U.S. 164, 174-75 (1974); *United States v. Morgan*, 505 F.3d 332, 339 (5th Cir. 2007) (per curiam) (holding that grand jury testimony could be used to authenticate records in a preliminary hearing under Rule 104(a) without violating the Confrontation Clause because "*Crawford [v. Washington]*, 541 U.S. 36 (2004),] does not apply to foundational evidence authenticating business records in preliminary determinations of the admissibility of evidence.").

Second, the government has shown that the 248 text messages provided to the defense as proposed trial exhibits have distinctive characteristics that serve to authenticate them. *See* Fed. R. Evid. 901(b)(4) (providing that authentication may be achieved through "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances."). *See also United States v. Jones*, 107 F.3d 1147, 1150 (6th Cir. 1997) (internal quotation marks and citation omitted) (observing that "the contents of a writing may be used to aid in determining the identity of the declarant.")

For example:

- Each text message displayed the PIN of the device sending and receiving the text;

- Each user entered his or her name into their SkyTel pager so when they sent a message to another pager, their name was usually automatically displayed to the recipient as the sender of the incoming message;

- Defendant Kwame Kilpatrick often used an auto-signature of "MAYOR KILPATRICK" or "MAYOR" that automatically attached to his text messages (also, rather than his name, this auto signature was often displayed as his PIN identifier when he sent a text message);

- Defendant Bernard Kilpatrick used an auto-signature containing a quote: "DON'T SWEAT THE SMALL STUFF AND REMEMBER . . . IT'S ALL SMALL STUFF;"

7

- On at least two of the three PINs assigned to Defendant Kwame Kilpatrick, he circulated text messages announcing that it was his "New Number" or "New Contact Info" and he signed those messages "MAYOR KILPATRICK;"

- Defendants and their associates referred to one another using nicknames in some text messages, including referring to City of Detroit Chief Administrative Officer Derrick Miller as "Zeke" and Bernard Kilpatrick as "Zizwe;"

- Defendant Kwame Kilpatrick would refer to his father, Defendant Bernard Kilpatrick, as "Pops;" and

- Language patterns were distinctive: Kwame Kilpatrick often responded to messages by writing "COOL!" and Ferguson's text messages were characterized by misspellings, typographical errors and incorrect grammar and syntax.

These and other distinctive characteristics serve to authenticate the text messages. *See United States v. Safavian*, 435 F. Supp. 2d 36, 40 (D. D.C. 2006) (holding that distinctive characteristics were sufficient to authenticate emails where emails contained names of senders and recipients and contents discussed various professional and personal matters); *United States v. Siddiqui*, 235 F.3d 1318, 1322 (11th Cir. 2000) (holding that emails were authenticated by contents – including email address, automatic reply to sender, and use of nicknames – and context where messages indicated knowledge of matter at issue in obstruction charge).

In addition, as illustrated in the government's brief at 11-13, many of the text messages contain personal information that further confirm the identity of the writer. *See* Fed. R. Evid. 901 advisory committee's note to subdivision (b), example (4) (observing that "a document or telephone conversation may be shown to have emanated from a particular person by virtue of its disclosing knowledge of facts known particularly to him."). The text messages at issue here often contain either (1) personal or private information known only

to Defendants and their closest associates; or (2) information that Defendants were privy to by virtue of their positions within the City prior to the information becoming public or widely known.  *See Jones*, 107 F.3d at 1150 (holding that greeting card was properly authenticated where recipient of card testified that card was signed by the defendant and contained references to the defendant's family "that no one else could have written."); *Safavian*, 435 F. Supp. 2d at 40; *Siddiqui*, 235 F.3d at 1322.

The above-described distinctive characteristics are sufficient for the Court to make a preliminary determination as to the authenticity of the relevant text messages under Rule 104.

Third, Defendant Kwame Kilpatrick has publicly admitted that he and other City employees communicated with one another via the two-way SkyTel pagers.  In pleadings, briefs, and sworn deposition testimony in both state and federal court, Defendant Kwame Kilpatrick has acknowledged that from 2002 to 2005 he regularly used SkyTel's two-way pagers to send and receive electronic communications to and from other City officials, friends, and family.  *See, e.g., Flagg v. City of Detroit, et al.*, E.D. Mich. Case No. 05-cv-7453, Kilpatrick's Joinder in Motion to Preclude Discovery of Electronic Communications Based Upon the FSCA; *Detroit Free Press v. City of Detroit, et al.*, Wayne County Circuit Court Case No. 08-100214 CZ, Defendants' Combined Objection and Memorandum of Law Regarding Detroit Free Press at 3, and Brief in Support of Motion for Protective Order and Stay of Proceedings of Kwame Kilpatrick at 3.  This Court can consider the admissions made by Defendant Kwame Kilpatrick and his attorneys in other proceedings to determine whether the government has made a prima facie showing of authenticity.  *See* Fed. R. Evid. 104(a).

Fourth, pursuant to Fed. R. Evid. 901(b)(3), the jury will be able to rely on comparisons with previously authenticated text messages to establish that any remaining text messages are authentic. Once a witness (or other evidence) identifies a conversation and connects a PIN to a Defendant, that by itself is sufficient to allow a reasonable juror to conclude that all other texts associated with that PIN are sent or received by that particular Defendant. *See Safavian*, 435 F. Supp. 2d at 40-41 (holding that emails from same unique sender ID are sufficiently authenticated by comparing those emails with other emails from same sender ID sending messages authenticated through distinctive characteristics). A reasonable jury could find that the text message exhibits are text messages sent between Defendants and third-parties on the two-way SkyTel pager devices used by them.

In addition to the above four methods of authentication, the government is also able to provide testimony of witnesses with knowledge of the text messages and law enforcement agents familiar, by virtue of their investigation, with the PINs used by each Defendant. (Gov't Resp. at 7-9.) This testimony is unnecessary, however, at this time in light of the four methods described above. Considering the information provided under those four methods, this Court concludes that the government has made a prima facie showing of authenticity on the relevant text exchanges under Rules 104 and 901.

Moreover, because Defendants do not object, the Court will allow the government to display the text messages to the jury in WordPerfect format so as to streamline the presentation of evidence and avoid juror confusion.

The manner in which the text messages are displayed in the SkyTel spreadsheet is confusing – the spreadsheet for an individual PIN includes, in chronological order, each message received or sent by that PIN, and does not connect a related series of messages

to each other. At any given time, each particular pager was often communicating with more than one other person. As a result, it is very difficult to follow the threads of conversation solely from the SkyTel spreadsheet. In addition, each time a text message appears as a sent or received message in the SkyTel spreadsheet, a portion of the message to which it was responding is embedded within the spreadsheet entry. This makes it difficult to discern where one message ends and the next begins.

In order to clarify the order and substance of relevant text messages, the government explains that it converted SkyTel's spreadsheet into a searchable Concordance format, extracted relevant text messages into WordPerfect documents, so as to make each exchange more understandable. The only alteration is one of emphasis for readability. The government will highlight in bold the most recent thread of a conversation so that it stands out against the previous, embedded text message to which it is replying. This will minimize juror confusion and allow the jury to more easily digest the most relevant text messages. The government has provided the defense with the proposed text message exhibits thus allowing them an opportunity to review the exhibits for accuracy.

### C. Conclusion

For the above-stated reasons, the government's motion *in limine* for pretrial determination of authenticity of certain evidence is GRANTED without the need for testimony and WITHOUT PREJUDICE to specific hearsay objections that Defendants may raise at trial regarding particular text messages. The government's motion is also GRANTED as to its request to display the text message exchanges to the jury in WordPerfect format.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: August 7, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 7, 2012, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager