UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

KWAME KILPATRICK, ET AL.,

    Defendants.
                                        /

Case No. 10-20403

Honorable Nancy G. Edmunds

**OPINION AND ORDER REGARDING POTENTIAL CONFLICT OF INTEREST RAISED BY DEFENDANT KWAME KILPATRICK**

Defendant Kwame Kilpatrick and Co-Defendants have been charged in a 46-count Indictment that includes a RICO conspiracy count, as well as several other counts involving bribery, extortion, obstruction of justice, and fraud. A joint trial is set to begin on September 6, 2012, and jury selection has already started.

At a hearing held on August 14, 2012, this matter came before the Court regarding a potential conflict of interest raised by Defendant Kwame Kilpatrick on Tuesday, August 7, 2012. Kilpatrick is requesting that two of his appointed counsel, Jim Thomas and Michael Naughton, be disqualified and that new counsel be appointed because (1) Thomas previously represented Gasper Fiore, who is the "Towing Contractor" described in paragraphs 306-312 of Count 1 and Count 12 of the Fourth Superseding Indictment, and (2) Thomas and Naughton have an "of counsel" relationship with O'Reilly Rancilio P.C., the law firm that currently represents the plaintiffs in a civil suit against Defendant Kilpatrick and others. *See Macomb Interceptor Drain Drainage District v. Kwame M. Kilpatrick, et al.*, Civil

Case No. 2:11-cv-13101 (Cleland, J.). For the reasons stated on the record at the August 14, 2012 hearing and below, Defendant Kwame Kilpatrick's request for new appointed counsel is DENIED, and the trial in this matter will not be delayed.

**A. Analysis**

   **1. The Government's Decision to Dismiss All Allegations Related to Gasper Fiore in Counts 1 and 12 of the Fourth Superseding Indictment Resolves Any Conflict of Interest**

Despite Defendant Kwame Kilpatrick's objections, this Court agrees with the government on the Gasper Fiore conflict. First, any actual or potential conflict of interest arising out of defense counsel Jim Thomas's successive representation of Mr. Fiore and Kwame Kilpatrick is eliminated by the government's commitment to dismiss all allegations related to Gasper Fiore – specifically, paragraphs 306-312 of Count 1 and all of Count 12 of the Fourth Superseding Indictment, and their representation that they will not call him as a witness in their case. *See United States v. Taylor*, No. 07-3151, 2012 WL 2819270, at *7 (6th Cir. July 10, 2012); *United States v. Perry*, 94 F. App'x 481, 483-84 (9th Cir. 2004). No waiver is necessary.

Second, even though Defendant Kilpatrick insists that he still wants to call Fiore as a witness or to cross-examine other witnesses about Fiore, he has not persuasively explained how this testimony will be relevant or otherwise admissible to support his defense. Mr. Kilpatrick acknowledges that "evidentiary and Fifth Amendment roadblocks" may "prohibit [him] from utilizing Mr. Fiore as a witness" (Kilpatrick Conflict Br. at 22-23) and has not convincingly shown how, in light of the government's decision to dismiss the Fiore allegations, he is being denied his Sixth Amendment right to conflict-free counsel if

2

Mr. Thomas continues to represent him as appointed counsel. The government's decision to dismiss the Fiore allegations resolves any conflict that might have implicated Mr. Kilpatrick's Sixth Amendment rights. As the Sixth Circuit explained in *Moss v. United States*, 323 F.3d 445, 464 (6th Cir. 2003), if a conflict involves "a matter that is irrelevant or the conflict is merely hypothetical, there is no constitutional violation."[1] As the Court explained at the August 14, 2012 hearing, if Defendant's argument were accepted, then any defendant in any criminal case could disqualify his attorney by simply claiming that he wanted to call one of his attorney's former clients as a witness. The law does not permit that sort of manipulation. Unless that witness's testimony satisfies the Federal Rules of Evidence, then the district court's decision to exclude it does not violate the defendant's rights. A defendant's right to "a complete defense does not imply a right to offer evidence that is otherwise inadmissible under the standard rules of evidence." *United States v. Lucas*, 357 F.3d 599, 606 (6th Cir. 2004).

Finally, any concerns Defendant Kilpatrick may have that Mr. Thomas's prior representation of Fiore will create a conflict during jury selection are adequately resolved by the government assurance to the Court that it will abide by its commitment to dismiss all allegations in the Fourth Superseding Indictment related to Mr. Fiore and by the fact that the jury questionnaires completed by prospective jurors do not mention Fiore. For all these reasons, the government's decision to dismiss all allegations related to Gasper Fiore – specifically, paragraphs 306-312 of Count 1 and all of Count 12 of the Fourth Superseding Indictment – resolves any actual or potential conflict of interest.

---

[1] The Court also has the option, if necessary, to appoint independent counsel if Mr. Fiore is called as a defense witness.

## 2. Under Facts Presented Here Any Potential Conflict of Interest Arising From Defense Counsels' "Of Counsel" Affiliation with O'Reilly Rancilio Firm Does Not Require Disqualification

Defendant Kwame Kilpatrick also argues that two of his appointed counsel, Jim Thomas and Michael Naughton, should be disqualified because a potential conflict of interest arises out of their "of counsel" relationship with the O'Reilly firm. Kilpatrick's argument is one of imputed disqualification – members of the O'Reilly firm would be disqualified from representing Kilpatrick in this case because they represent the opposing party in the civil *Macomb Interceptor* case and thus this Court should impute their disqualification upon "of counsel" attorneys Jim Thomas and Michael Naughton and preclude them from continuing to serve as appointed counsel in this criminal action. For the reasons discussed below, this Court rejects Defendant Kilpatrick's arguments for disqualification.

Defendant Kilpatrick's brief provides background facts. Mr. Thomas became affiliated with the firm of Plunkett Cooney in 2007. While maintaining separate offices, Mr. Thomas and Mr. Naughton continued their relationship with Plunkett Cooney up until April 1, 2012 when they became affiliated with the Macomb County law firm of O'Reilly Rancilio, P.C. – long after this criminal case had begun and long after the O'Reilly firm had started representing the plaintiffs in the civil *Macomb Interceptor* case.

The *Macomb Interceptor* case was filed on July 18, 2011. Attorneys Thomas and Naughton were never retained to represent Mr. Kilpatrick in the *Macomb Interceptor* case, but filed an Answer so as to preserve Mr. Kilpatrick from being defaulted and premised on the understanding that they would soon be replaced with other counsel. The Answer was filed by James C. Thomas, P.C. on September 15, 2011. With no replacement counsel yet

named, and with Mr. Kilpatrick's consent, Mr. Thomas moved to withdraw as Kilpatrick's counsel on February 16, 2012, but the court, in a March 12, 2012 Order, held the motion in abeyance for 30 days in order to allow Kilpatrick sufficient time to secure substitute counsel. The *Macomb Interceptor* court did, however, grant the motion to withdraw on March 28, 2012, after being informed by Mr. Thomas that, as of April 1, 2012, he would become "of counsel" to the O'Reilly firm. (Kilpatrick Conflict Br., Ex. 1, 3/28/12 Order of Withdrawal.) Prior to withdrawal in that civil case, Mr. Thomas had no substantive discussions with Kilpatrick, did not participate in any depositions, did not interview any witnesses, and performed no legal research – in essence, the Answer was filed and nothing more was done. (Kilpatrick Conflict Br. at 5). More importantly, with the exception of discussions that privileges would be preserved and that protections would be maintained to avoid any potential or inadvertent sharing of information, neither Thomas nor Naughton had any substantive discussions relating to the *Macomb Interceptor* case with any member of the O'Reilly firm. (*Id.*)

Since April 1, 2012, when they became "of counsel" to the Macomb County law firm of O'Reilly Rancilio, P.C., Thomas and Naughton have maintained a thick ethical wall between themselves and the O'Reilly firm's work on the *Macomb Interceptor* case. All of their client files – including Kilpatrick's – remain in their own Detroit office, separate from the O'Reilly firm's office in Sterling Heights. (*Id.* at 2.) Thomas and Naughton store all of their electronic files – and the electronic files of their staff and calendars – on a separate password-protected server, which no one from the O'Reilly firm can access. (*Id.*) As stated above, they assure the Court that there have been no substantive discussions with anyone from the O'Reilly firm about the *Macomb Interceptor* case. (*Id.* at 5.) Also, if the

5

O'Reilly firm is successful in that litigation, Thomas and Naughton will not share in any legal fees because they have "no financial connection whatsoever" with that case.

These precautions adequately protect against any actual or potential conflict of interest, and the O'Reilly firm's representation of the plaintiffs in the *Macomb Interceptor* case does not provide a sufficient reason to disqualify attorneys Thomas or Naughton here. *See Hempstead Video, Inc. v. Valley Stream*, 409 F.3d 127, 135-39 (2d Cir. 2005) (affirming lower court's decision denying a motion to disqualify an attorney in a similar "of counsel" relationship where sufficient screening was established, and holding that "any presumption of shared confidences that may arise by operation of law [have] been sufficiently rebutted," and "continued representation . . . should be viewed as free of disqualifying taint"); *Gray v. Mem'l Med. Ctr.*, 855 F. Supp. 377, 379-80 (S.D. Ga. 1994) (observing that "the level of an individual attorney's involvement within a firm" is an "important factor in a decision to impute disqualification" and denying motion to disqualify "of counsel" attorney). *See also In re County of Los Angeles*, 223 F.3d. 990, 996-97 (9th Cir. 2000) (observing that "[a] motion to disqualify a law firm can be a powerful litigation tactic," that "[a] client's confidences can also be kept inviolate by adopting measures to quarantine the tainted lawyer," and that "[a]n ethical wall, when implemented in a timely and effective way, can rebut the presumption that a lawyer has contaminated the entire firm" and finding client confidences adequately protected by "appropriate screening measures" and declarations that "the pending case" was not discussed and that the conflicted attorney did "not have access to the case file."); *Manning v. Waring, Cox, James, Sklar and Allen*, 849 F.2d 222, 224-225 (6th Cir. 1988) (observing that "[o]ne method of rebutting the presumption [of shared confidences] is by demonstrating that specific institutional screening

6

mechanisms have been implemented to effectively insulate against any flow of confidential information").

Defendant Kilpatrick's reliance on *Shaw v. London Carrier, Inc.*, No. 1:08-cv-401, 2009 WL 4261168 (W.D. Mich. Nov. 24, 2009), *aff'd*, 2010 WL 748217 (W.D. Mich. Mar. 1, 2010), for a contrary result is misplaced. First, as the magistrate judge observed, "[a] violation of the rules of professional ethics . . . does not automatically necessitate disqualification of an attorney." 2009 WL 4261168 at *3 (citation omitted). Second, and more importantly, the facts in *Shaw* are distinguishable from those presented here. In *Shaw*, the disqualified attorney was originally counsel for one of the defendants in *Shaw* and had conducted discovery, filed motions and had "engaged in internal strategy discussions." *Id.* at 2. He subsequently joined the plaintiffs' law firm while the *Shaw* case was ongoing, and his former client sought to disqualify his new law firm from continuing to represent the plaintiffs based on the imputed disqualification rule embodied in Rule 1.10(b) of the Michigan Rules of Professional Conduct. Under those facts, the magistrate judge found that the plaintiffs' law firm should have timely notified the *Shaw* court about the potential conflict so it could confirm that the plaintiff law firm complied with Rule 1.10(b) by putting appropriate screening measures in place and by entering into an arrangement that precluded the screened attorney from sharing in any legal fees the plaintiffs law firm may obtain in that matter.

Unlike the plaintiff firm in *Shaw*, Mr. Thomas immediately informed Judge Cleland in the *Macomb Interceptor* case why he wanted to withdraw *before* he joined the O'Reilly firm. Moreover, as discussed above, Mr. Thomas and Mr. Naughton have taken the appropriate steps to be ethically screened from any participation in the *Macomb Interceptor* civil case

7

and will have no part of legal fees that may be awarded in that case.  Their conduct complies with Rule 1.10(b) and rebuts any presumption of shared confidences between them and the O'Reilly firm.  Given these facts, Thomas's and Naughton's "of counsel" affiliation with the O'Reilly firm does not disqualify them as Defendant Kilpatrick's appointed counsel in this criminal case.

To further protect against any potential conflict, however, this Court will appoint a fourth attorney to cross-examine all government witnesses connected to the Macomb Interceptor Drainage District litigation.  The government does not plan to call any of those witnesses until October, so a new attorney will have plenty of time to learn the case, coordinate strategy with Kilpatrick's three other appointed counsel, and adequately prepare for cross-examination.

**3.  There Are No Other Conflicts That Would Merit Disqualification of Counsel**

The Court has inquired about any other actual or potential conflicts with regard to each Defendant and his respective counsel and is satisfied that none exist that would justify disqualifying any of Defendants' current attorneys in this case.

First, as the government explained, it does not plan to call either Robert Schumake or Dante DeMiro (the two other individuals identified in the waiver Defendant Kwame Kilpatrick signed in this case regarding potential conflicts) as a witness in this case, and informs the Court that neither of them has relevant or otherwise admissible evidence that can be introduced at trial.  Thomas's prior representation of Schumake or DeMiro thus will not create a conflict.  (Gov't Conflict Br. at 5; Kilpatrick Conflict Br. at 5, n.3.)

Second, although Defendant Kilpatrick references a number of potential witnesses previously represented by attorney Martin Crandall, who is now representing Defendant

8

Victor Mercado, none of those witnesses will create a conflict here. (*See* Kilpatrick Conflict Br. at 2, n.2.) The government informed the Court that it will call, at most, three of those witnesses during its case-in-chief or rebuttal: Bernard Parker, Lucius Vassar, and Barry Clay, and Mr. Crandall informs the Court that each has provided a conflict waiver, as has his client, Defendant Mercado. (8/13/12 Crandall letter; 8/14/12 Hrg. Tr.)

Third, Defendant Ferguson's attorney, Gerald Evelyn, informed the Court that he formerly represented one witness on the government's witness list, Johnny Hardiman; that Evelyn represented Hardiman in a state case in the Wayne County Circuit Court Criminal Division in 2005 on an assault charge that was completely unrelated to any of the allegations in this criminal case, and that Mr. Hardiman is willing to waive any potential conflict of interest, as will Evelyn's client, Defendant Ferguson. (8/14/12 Evelyn letter; 8/14/12 Hrg. Tr.)

Fourth, Defendant Bernard Kilpatrick's attorney, John Shea, informed the Court that he had previously been appointed to represent one person related to this criminal matter, but never contacted the person or performed any substantive work and that appointment was withdrawn because, in the interim, Shea was appointed to represent his current client, Defendant Bernard Kilpatrick. Shea also informed that Court that this person is not on the government's witness list, is not someone he intends to call as a witness, and, to his knowledge, is not someone any other Defendant would call. Mr. Shea discussed this matter with his client, Defendant Bernard Kilpatrick, who agrees that there is no conflict of interest. (8/14/12 Hrg. Tr.)

Having found that no actual or potential conflict of interest justifies the disqualification of any defense counsel, this Court now addresses Defendant Kwame Kilpatrick's request

that substitute counsel be appointed for him because there has been a complete and total breakdown in his relationship with his current appointed counsel.

### 4. Kilpatrick's Request to Delay Trial and to Appoint Substitute Counsel is Denied

Defendant Kilpatrick has also requested "that the Court allow [him] the opportunity to obtain new counsel." (8/14/12 Hrg. Ex. A, Kilpatrick Aff. ¶ 24.) To do so, the Court would have to delay trial, probably for at least six months. The Court denies Defendant's request for new appointed counsel on the eve of trial.

The Sixth Amendment right to counsel of choice "does not extend to defendants who require counsel to be appointed for them." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006). "An indigent defendant has no right to have a particular attorney represent him and therefore must demonstrate 'good cause' to warrant substitution of counsel." *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990). "An inquiry into whether the substitution of counsel is warranted serves several important goals. This procedural protection not only aids in determining whether 'good cause' has been shown, but serves to ease the defendant's distrust, to preserve the integrity of the trial process, and to foster confidence in the jury verdict." *Id.* at 1131. The Supreme Court has thus "recognized a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar." *Gonzalez-Lopez*, 548 U.S. at 152 (internal citations omitted). "A litigant cannot play a 'cat and mouse game' with the court in order to preserve an issue for appeal or to delay proceedings." *United States v. Krzyske*, 836 F.2d 1013, 1017 (6th Cir. 1988).

As the Sixth Circuit observed in *United States v. Trujillo*, 376 F.3d 593, 606 (6th Cir.

2004), "[a] motion for new court-appointed counsel based upon defendant's dissatisfaction with his counsel previously appointed is addressed to the sound discretion of the court," and is reviewed "for an abuse of discretion." Factors considered in that review include:

> "(1) the timeliness of the motion, (2) the adequacy of the court's inquiry into the matter, (3) the extent of the conflict between the attorney and client and whether it was so great that it resulted in a total lack of communication preventing an adequate defense, and (4) the balancing of these factors with the public's interest in the prompt and efficient administration of justice." *United States v. Mack*, 258 F.3d 548, 556 (6th Cir. 2001); *Williams*, 176 F.3d at 314; *United States v. Jennings*, 83 F.3d 145, 148 (6th Cir. 1996).

*Id.* The second factor – the adequacy of the court's inquiry into the matter – is demonstrated by examining the details in Defendant Kilpatrick's Conflict Brief and his Affidavit, along with this Court's inquiry at the August 7th and August 14th hearings. The remaining factors are discussed below.

As to the first factor, Kilpatrick's request is untimely. Thomas has represented Kilpatrick for almost four and a half years in a number of state and federal cases, both civil and criminal. He was first retained in March 2008. (Kilpatrick Conflict Br. at 1, 2-4.) More importantly, Thomas has represented Kilpatrick in this case from the very beginning, starting in June 2010 when Kilpatrick was first indicted and he chose and retained Thomas to represent him. In July 2010, when Kilpatrick could no longer afford to pay Thomas, Kilpatrick successfully requested that Thomas remain on the case as his appointed attorney. (Doc. # 8, CJA Appointment.) As recently as last Tuesday's hearing, Kilpatrick confirmed to the Court that he had no "separate reason apart from the [Fiore] conflict" to request that Thomas withdraw. (8/07/12 Hrg. Tr. at 24-26.) Kilpatrick told the Court that he "love[d]" Thomas, and had been "trying to figure out some other way [to get rid of the Fiore conflict] without getting rid of [Thomas] and not having an independent counsel."

11

(8/07/12 Hrg. Tr. at 7, 11.)

Now, only six days later – and after 400 potential jurors have already filled out their questionnaires – Kilpatrick claims that his "love" for Thomas has spiraled into an irreconcilable dispute. Such an abrupt change is not credible – particularly given that Kilpatrick has "awaited trial for months without any complaints regarding his representation." *United States v. Marrero*, 651 F.3d 453, 465 (6th Cir. 2011), *cert. denied*, 132 S. Ct. 1042 (2012). Thus, the timing weighs heavily against allowing him to substitute new appointed counsel.

Further, Kilpatrick's professed explanation for the delay lacks credibility. In his affidavit, Kilpatrick claims that he did not fully appreciate the significance of the Fiore conflict until last week (Kilpatrick Aff. ¶¶ 17-18), but concedes that he signed a conflict waiver in this case in January 2011 acknowledging that he was "aware of the potential for conflict" arising from Thomas's prior representation of Fiore. (Kilpatrick Conflict Br. at 7, Ex. 3, waiver; Kilpatrick Aff. ¶¶ 11-12.) He also concedes that he reviewed a copy of the Fourth Superseding Indictment, filed on February 15, 2012; that he received discovery documents from the government on April 5, 2012, including a Form 302 describing Fiore's specific involvement in this case; and on June 2, 2012 was provided with a witness list that included Fiore. (8/07/12 Hrg. Tr.; 8/14/12 Hrg. Tr.) Given the above, Kilpatrick's attempt to turn Fiore into a recent revelation that has created a complete breakdown of the attorney/client relationship lacks credibility.

The Court understands Kilpatrick's argument that it was Thomas's responsibility to explain Fiore's significance and to once again raise the conflict issue. This may be so – and it is not trivial – but it is not sufficient to justify saying there is a complete breakdown

12

of his relationship with Thomas that precludes an adequate defense by his well-prepared and well-qualified appointed counsel. The Court cannot accept that their attorney/client relationship is now suspect, especially considering the timing of Kilpatrick's complaint, in light of the four-and-a-half-year attorney/client relationship between Kilpatrick and Thomas in both civil and criminal, federal and state litigation, including this case.

Neither Kilpatrick nor Thomas has demonstrated that any dispute here is "so great that it [has] resulted in a total lack of communication preventing an adequate defense." *Marrero*, 651 F.3d at 466 (internal quotation marks and citation omitted). Thomas has confirmed that he is "ready" and "willing" to proceed as Kilpatrick's appointed counsel. (8/07/12 Hrg. Tr. at 4.) Thomas also informed the Court that "Kilpatrick has become very, very engaged in preparation in the last month," and Kilpatrick acknowledged that Thomas had provided him with access to the government's discovery materials and that he had gone through FBI 302s and grand jury testimony. (*Id.* at 6-7.) Kilpatrick's Conflict Brief further demonstrates that Kilpatrick and Thomas are capable of collaborating on Kilpatrick's legal defense. A "shouting conversation" and lingering ill will about the Fiore conflict do not rise to the level of the sort of impasse that would justify appointment of substitute counsel. Rather, the incidents described in Kilpatrick's affidavit describe bickering and disagreements over Thomas's handling of the Fiore conflict rather than a "total lack of communication preventing an adequate defense." *Marrero*, 651 F.3d at 466. More importantly, now that the government has agreed to dismiss the Fiore allegations in their entirety, Kilpatrick's inability to put that issue behind him suggests that he is manufacturing a wedge issue in an effort to delay trial.

Finally, the Court addresses the fourth factor − the public's interest in the prompt and

efficient administration of justice. The public's interest in the prompt and efficient administration of justice outweighs Kilpatrick's interest in substituting new appointed counsel on the eve of trial. This case is one of the biggest criminal cases currently pending in this district. It is already consuming the resources of 400 potential jurors, at least 10 defense attorneys, almost 200 witnesses, and much of the Court's staff. The trial date has been set for over six months, and the Court has set aside four months of its calendar to try this case. Moving such a resource-intensive trial at the last minute would be a logistical nightmare for all parties.

Under similar circumstances, the Sixth Circuit has rejected a last minute request to substitute counsel. For example, in *United States v. Mooneyham*, 473 F.3d 280, 291 (6th Cir. 2007), the Sixth Circuit affirmed the trial court's denial of the defendant's request for a continuance four days before trial so that he could substitute two retained counsel for his appointed counsel. The defendant expressed a number of complaints with his appointed counsel, including his belief "that [appointed counsel]'s resistence" to the defendant's desire to "interview[ ] a possible defense witness" in his previous trial was the result of his appointed counsel's conflict of interest arising from his prior representation of that witness and because appointed counsel did not share all of the discovery materials with him. *Id.* at 291-92. The district court denied the defendant's request, finding that (1) appointed counsel was well-prepared and well-qualified; (2) the defendant had not shown "a total lack of communication between attorney and client, preventing an adequate defense;" and (3) the defendant's "motion was an attempt to manipulate the trial, that a continuance would cause prejudice to the prosecution and create difficulties for the trial court based on its other scheduling needs, and that it would frustrate the public interest in the prompt and

efficient administration of justice." *Id.* at 292. On appeal, the defendant raised the same arguments rejected by the district court. The Sixth Circuit affirmed the district court's decision, finding that "the district court heard full argument on the issue and considered all factors relevant to the 'good cause' analysis as mandated by the law of this circuit" and did not abuse its discretion. *Id.* at 292-93. *See also United States v. Griffin*, No. 10-1810, 2011 WL 6355214, **3-4 (6th Cir. Dec. 20, 2011) (affirming district court's decision denying continuance to allow defendant to substitute retained counsel for court-appointed counsel presented to the court on the first day of trial); *United States v. Alkazoff*, No. 90-2006, 1992 WL 180179, *4 (6th Cir. July 29, 1992) (same; observing that "[b]ecause defendant had three months prior to trial to obtain counsel of his choice, and in view of his claim of indigency, the timing of his request for a continuance raises the suspicion that it was merely a delaying tactic."); and *Lockett v. Arn*, 740 F.2d 407, 413 (6th Cir. 1984) (holding, on habeas review, that the trial court did not abuse its discretion in denying a request the day before trial to replace appointed counsel with retained counsel).

After a thorough inquiry and consideration of all the above factors, the Court denies Defendant Kwame Kilpatrick's request for the appointment of substitute counsel.

**B. Conclusion**

For the above-stated reasons and those stated on the record at the August 14, 2012 hearing, Defendant Kwame Kilpatrick's request for new appointed counsel is DENIED, and the trial in this matter will not be delayed.

        s/Nancy G. Edmunds
        Nancy G. Edmunds
        United States District Judge

Dated: August 15, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 15, 2012, by electronic and/or ordinary mail.

        s/Carol A. Hemeyer
        Case Manager