UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

BOBBY FERGUSON, ET AL.,

    Defendants.
_____/

Case No. 10-20403

Honorable Nancy G. Edmunds

**OPINION AND ORDER DENYING DEFENDANT BOBBY FERGUSON'S MOTION TO BE RELEASED ON BOND PENDING SENTENCING [294]**

This matter comes before the Court on Defendant Bobby Ferguson's motion to be released on bond pending sentencing and for a hearing on his motion [294]. The government opposes Defendant's motion. Having previously conducted a bond hearing on this matter on March 11, 2013, and having reviewed Defendant Ferguson's motion and materials submitted in support of his motion, the Court finds that no further hearing is necessary. For the reasons stated below, Defendant Ferguson's motion is DENIED.

**I.    Facts**

On March 11, 2013, following a lengthy jury trial, Defendant Bobby Ferguson was found guilty on 9 of the 11 counts in which he was charged. The charges on which he was found guilty included: one count of RICO conspiracy, 18 U.S.C. § 1962(d); six counts of extortion, 18 U.S.C. § 1951; one count of attempted extortion, 18 U.S.C. § 1951; and one count of bribery, 18 U.S.C. § 666(a). (Verdict, 3/11/13, ECF No. 277.) Ferguson's Co-Defendant Kwame Kilpatrick was found guilty on 24 of the 30 counts in which he was charged, and Co-Defendant Bernard Kilpatrick was found guilty on 1 of the 4 counts in

which he was charged. (*Id.*)

Immediately following the verdict, the government moved to revoke the bonds of Defendants Kwame Kilpatrick and Bobby Ferguson. In the early afternoon on March 11, 2013, the Court conducted a bond revocation hearing, considered oral argument from the government and defense counsel, granted the government's motion, and remanded Defendants Kwame Kilpatrick and Bobby Ferguson into the custody of the U.S. Marshals.

The Court explained that this decision, like many the Court is required to render, "turns on the burden of proof," and the statute at issue here, 18 U.S.C. § 3143(a), governing release or detention pending sentencing, creates a presumption in favor of detention, and the defendant has the burden of convincing the Court by clear and convincing evidence that the defendant is not likely to flee or present a danger to the safety of others or the community and should not be detained. (3/11/13 Detention Hr'g Tr. at 4, 18). Applying decisions addressing 18 U.S.C. § 3143(a) and considering the parties' arguments, the Court found that Defendant Ferguson failed to overcome the statutory presumption for detention by presenting the requisite clear and convincing evidence. (*Id.* at 20-21.)

> With respect to the defendant, Mr. Ferguson, he has a prior conviction of assault with intent to do great bodily harm. He nevertheless, following that, was found in possession of a firearm at his place of business. He appears to have access to plenty of money, although he denies that that still exists, and he has a history of, certainly of intimidation, as is evident in the testimony of Officer Fountain and by some of the other witnesses for whom he wanted to – whom he wanted to give false testimony to the grand jury.
>
> Mr. Evelyn says that his resources and ability to earn a living have been compromised, that he has roots in the community and is not likely to flee.
>
> I guess I would say that the same considerations weigh on Mr. Ferguson's compliance as I already articulated with respect to Mr. Kilpatrick.

(3/11/13 Detention Hr'g Tr. at 20). The Court was referencing its reliance on the rationale

2

and result in *United States v. Dimora*, No. 1:10CR387, 2012 WL 1409396, *4 (N.D. Ohio Apr. 23, 2012), *aff'd*, No. 12-3554 (6th Cir. June 21, 2012) (unpublished). As the *Dimora* court observed:

> It is not unusual for persons seeking pre-sentence release to point to their *compliance* with pre-trial release orders as evidence that they will appear for sentencing. The argument is routinely rejected because prior to trial there is the possibility of no imprisonment, which evaporates upon a finding of guilt.

*Id.*

In his present motion, Defendant Ferguson moves for release from detention pending sentencing which will occur sometime after post-verdict motions, if any, are filed and heard. In support, Ferguson relies on the previous facts argued at the March 11, 2013 hearing, i.e., that he complied in all respects with the conditions of release that were set by the Court before and during trial and thus a tether is sufficient to address flight risk, if any; that, having liquidated assets to pay for his defense in this and other litigation and having his ability to earn a living compromised by these trials weigh against him being considered a flight risk; and that he has roots in the community and significant family ties here also weigh against finding him to be a flight risk.

The only new evidence Defendant adds is that his mother and several other individuals are willing to offer their five homes as bond collateral to bolster the arguments provided at the March 11, 2013 detention hearing and reiterated here. Defendant Ferguson informs the Court that his mother Annie Ferguson offers her Detroit area home as well as her home in Alabama as bond collateral; Sherri McMillion, Richard McMillion, Sr. and Richard McMillion, Jr. offer their Detroit area homes as bond collateral; and Donald Nix has offered his mobile home in Sylacaugo, Alabama as bond collateral. (Def.'s Mot.

3

at 2-3; Def.'s Reply, Exs. A-C, deeds to Michigan properties, Ex. D, payoff on loan for mobile home.)

As the government correctly states in its Response, Defendant fails to present any documentation showing the value of the property offered or the owner's current equity in the property offered. More importantly, however, the Local Rules for Criminal Cases in the Eastern District of Michigan, as well as this District's longstanding custom and practice, explicitly disfavor the posting of real property as collateral for bond in criminal cases. Local Criminal Rule 46.1(b)(1) expressly states that "[o]nly cash, money order or cashier's check made payable to 'Clerk, United States District Court,' or credit card is acceptable for a cash bond." E.D. Mich. LCrR 46.1(b)(1). Subsection (b)(2) of that same Rule explains, "[u]nless approved in writing by a District Judge, *property shall not be accepted* as collateral for a bond." E.D. Mich. LCrR 46.1(b)(2) (emphasis added). This Court adheres to this practice in criminal matters. Defendant's argument, that if he were to flee, his family members and friend would suffer the dire consequence of losing their homes, fails to persuade the Court that it should vary from its practice, the practice of other judges in the Eastern District of Michigan, or the Local Rules.

At the March 11, 2013 detention hearing, the government proffered the following additional facts militating in favor of detention, i.e., Defendant Ferguson: (1) has a 2005 conviction for assault with the intent to do great bodily harm in connection with the pistol-whipping of a former employee; (2) disregarded the court's directive not to possess a firearm as evidenced by the government's recovery (a) in 2009 of two semi-automatic pistols from his place of business, and (b) in 2010 when a loaded shotgun was recovered during the execution of a search warrant at a residence known to be frequented by

4

Defendant; (3) has a history of being able to access large sums of cash; (4) placed a home in Southfield in the name of one of his employees to evade law enforcement; (5) gave Pretrial Services multiple addresses as his residence; (4) as reflected in trial testimony, sought to obstruct justice by (a) threatening Officer Fountain in connection with citations issued against Defendant, (b) instructing witnesses in this matter to lie to the FBI and the grand jury, and (c) instructed one of his employees to take responsibility for one of the weapons recovered from his business in 2009; and (6) since the jury found Defendant Ferguson guilty of nine felonies, including a RICO conspiracy, he faces a lengthy prison sentence, one well in excess of the months between now and his sentencing. (3/11/13 Detention Hr'g Tr. at 11-14.) Defendant failed to overcome the government's arguments and the presumption for detention, and this Court concluded that it could not find that Defendant Ferguson had established by clear and convincing evidence that he does not pose a flight risk.

In its Response, the government reveals another fact that weighs in favor of detention and cuts against Defendant Ferguson's claim that he is not a flight risk. The government recently discovered that in 1999 Defendant Ferguson fraudulently obtained a Michigan Driver's License in the name of "Antonio Cortez-Julian Talley." (Gov't Resp., Ex. A, copies of Michigan Driver's Licenses.) The license Defendant fraudulently obtained from the Michigan Secretary of State expired on July 4, 2002. The address on that license is "6328 Julian Street, Detroit, Michigan." (*Id.*) It is the same address associated with Four Children's Enterprises, L.C., a limited liability company owned by Defendant Ferguson. (Gov't Resp., Ex. B, Michigan corporation documents for Four Children's Enterprises, L.C.) In addition, the Julian Street address on the license is the same address where the City of

5

Detroit sends its bills for property taxes owed by the company.

In his Reply, Defendant Ferguson does not deny that he fraudulently obtained a Michigan Driver's License under an alias. Rather, he argues that there is no evidence that anyone has ever used the license for any purpose. This argument fails to address the government's contention that a criminal history check of the information on the fraudulently obtained license showed a traffic ticket issued in Alabama, the state where Defendant's mother resides and where he is known to have multiple bank accounts.

Defendant Ferguson also argues that there is nothing about this license that suggests that he is a flight risk. The Court disagrees. That Defendant Ferguson lied to the Michigan Secretary of State to obtain a fictitious license is evidence of his deception. Although Defendant Ferguson does not explain why he applied for and obtained a Michigan Driver's License in an alias, it is logical to deduce that it could not have been for any lawful purpose. It provided Defendant Ferguson with the means to commit fraud and to operate under a fictitious identity. That Defendant Ferguson was able to obtain a government document with a false identity once shows that he likely can do so again and thus presents a flight risk.

Finally, Defendant Ferguson reiterates the argument that he should not be considered a flight risk because he intends to vigorously defend against the criminal charges in the retrial later this year of the GardenView case pending before Judge Lawson. Although this is not a new argument, there is a new twist. In that criminal matter pending before Judge Lawson, Defendant Ferguson must find and work with new counsel in light of Gerald Evelyn's need to withdraw. Ferguson argues that his ability to do so is hampered by his presence in prison. This is not enough to convince the Court that Ferguson should be

released on bond pending sentencing. Ferguson's argument that it is difficult for him to confer with counsel applies in every situation where a defendant is detained. In this case, Ferguson has the advantage of having Gerald Evelyn, experienced and knowledgeable counsel, available to assist him in his efforts in obtaining new counsel and to work with and quickly apprise new counsel of the criminal charges, arguments, testimony, and evidence introduced in Ferguson's earlier GardenView trial.

Taking into consideration the parties' arguments and the evidence submitted, this Court reaches the same conclusion it did at the March 11, 2013 detention hearing. The Court finds that Defendant Ferguson has not satisfied the burden of demonstrating by clear and convincing evidence that he is not a flight risk or danger to the community. Similar to the defendant in *Dimora*, Defendant Ferguson is facing considerable time in prison, he has divested himself of significant assets, "and he is facing the prospect of a drastic change in lifestyle in the form of incarceration for a potentially lengthy period of time" and thus "poses a significant risk of flight." *Dimora*, 2012 WL 1409396 at *4 (citing cases). Again, similar to the defendant in *Dimora*, "extensive trial testimony and evidence established that [the defendant] committed his profit-driven crimes with people whom he considered to be close friends." *Id.* at *2. As the trial testimony revealed, when the crimes charged against Defendant Ferguson in this matter were being investigated, Ferguson "turned to his friends to assist him in covering it up." *Id.* at *3. Just as the *Dimora* court concluded, this Court concludes that "[g]iven [Defendant Ferguson]'s willingness to exploit his friends to further his criminal pursuits, the Court finds that there is every reason to believe that he would not hesitate to prevail upon friends to help him flee." *Id.*

**III.   Conclusion**

For the above-stated reasons, Defendant Ferguson's motion to be released on bond pending sentencing is DENIED.

        s/Nancy G. Edmunds
        Nancy G. Edmunds
        United States District Judge

Dated: April 4, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 4, 2013, by electronic and/or ordinary mail.

        s/Carol A. Hemeyer
        Case Manager