UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        CRIM. NO. 10-20403-NGE

    Plaintiff,

        HON. NANCY G. EDMUNDS

    v.

D-3  BERNARD N. KILPATRICK

    Defendant.

## GOVERNMENT'S SENTENCING MEMORANDUM

NOW COMES the United States of America, by and through its attorney, BARBARA L. MCQUADE, United States Attorney, and respectfully submits this Sentencing Memorandum regarding defendant BERNARD KILPATRICK, who is scheduled to be sentenced on **October 17, 2013, at 2 p.m.**  The government recommends that BERNARD KILPATRICK be sentenced to a term of imprisonment between 27 and 33 months.  Such a sentence is warranted by the nature and characteristics of the defendant, the potential sentence available for this kind of crime and the

applicable guideline range of 27 to 33 months, and the need to avoid disparities with other similarly-situated defendants.

## BACKGROUND

On February 15, 2012, Bernard Kilpatrick was charged in a Fourth Superseding Indictment with participating in a racketeering conspiracy, attempted interference with interstate commerce by extortion, and subscribing false tax returns. Trial commenced on September 6, 2012. On March 8, 2013, the defendant was found guilty by a jury of Count 38, subscribing false tax returns in violation of Title 26, United States Code, Section 7206(1).

## FACTS

The Court is well-aware of the facts of the case and the evidence that was adduced during trial against the defendant, Bernard Kilpatrick.

Bernard Kilpatrick is the father of convicted former mayor Kwame Kilpatrick and was the president of Maestro Associates, LLC. Shortly before Kwame Kilpatrick became Mayor, Bernard Kilpatrick established Maestro, a company that would purportedly consult for local area businesses seeking municipal contracts.

Although the jury was unable to reach a unanimous decision regarding whether Bernard Kilpatrick was guilty of the racketeering conspiracy, the preponderance of the evidence established that Bernard Kilpatrick was a co-conspirator of Kwame Kilpatrick and Ferguson, holding regular "business meetings" with them in an effort to determine what City business the Enterprise should exploit. As the evidence at trial demonstrated, Bernard Kilpatrick persuaded City vendors to pay him, through his company, Maestro, because of his access to the Mayor. In addition to declared income of $1.3 million during his son's tenure as Mayor – nearly all of which was derived from City vendors for virtually no work in return -- Bernard Kilpatrick made cash deposits of over $605,000 during that same period. (*Gov't Exhs. BKF-5, 6.*) Bernard Kilpatrick had no known alternative source of income, and his extensive gambling activities showed more net losses than gains. (*Gov't Exh. BKF-8.*)

The evidence, as testified to by Special Agent Rowena Schuch from the Internal Revenue Service, and Bernard Kilpatrick's tax preparers, Cassandra Jones and Alan Young, showed that Bernard Kilpatrick under-reported his income for the 2005 tax year by diverting a $180,000 disbursement from his employee-profit

sharing plan into an account shielded from his tax preparers. (*Tr. of Jury Trial, Testimony of Rowena Schuch, Vol. 56, 1/3/13, at 146-147; Vol. 57, 1/4/13, at 44-47*.) This represented almost half of his adjusted gross income for the 2005 year. Inclusion of the additional $180,000 would have affected Bernard Kilpatrick's tax liability for the 2005 tax year. The additional tax due and owing from failure to report the distribution of $180,000 was over $60,000. (*Tr. of Jury Trial, Testimony of Rowena Schuch, Vol. 56, 1/3/13, at 148*.)

This was only a portion of the income that Bernard Kilpatrick intentionally failed to disclose on his tax returns. As the Court is aware, several city contractors testified to being pressured by Bernard or Kwame Kilpatrick to give money to Bernard Kilpatrick in order to obtain or keep business with the City of Detroit, many of which he failed to disclose, including one such payment in 2005. Karl Kado, a contractor who held exclusive contracts with the City of Detroit from 2002 to 2006 to provide electrical and cleaning services at Detroit's Cobo Hall and Convention Center ("Cobo"), testified that he made payments of between $200,000-$300,000 to Bernard Kilpatrick to ensure that he maintained his contracts for

4

work within Cobo. (*Tr. of Jury Trial, Testimony of Karl Kado, Vol. 42, 12/3/12, at 38-39, 43.*) In 2005, Kado made a final payment to Bernard Kilpatrick of $100,000 in cash. (*Id. at 43.*) This payment was not reported on Bernard Kilpatrick's 2005 tax return.

      The $100,000 payment is corroborated by a consensual recording Kado made with Bernard Kilpatrick on February 8, 2008 in which Kado reminded Bernard Kilpatrick, "I gave you a hundred thousand dollars for the election" in 2005. Bernard Kilpatrick said, "Oh yeah." Later in the conversation, Bernard Kilpatrick acknowledged that he spent the $100,000 Kado gave him, along with some of his own money, at a casino, causing him to need to borrow more money to spend on his son's reelection campaign. (*Gov't Exh. COBO-0016; see also Tr. of Jury Trial, Testimony of Karl Kado, Vol. 42, 12/3/12, at 82-83, 92-93.*)

      Bernard Kilpatrick, upon learning that Kado had received a target letter from the government, met with Karl Kado and offered him a ten-year extension to his city contract in exchange for not meeting with federal prosecutors. (*Tr. of Jury Trial, Testimony of Karl Kado, Vol. 42, 12/3/12, at 100.*) This offer highlights the illegal

5

nature of the cash payments received from Kado, a portion of which was included in the $100,000 payment in 2005.

As noted in the pre-sentence report, the $100,000 amount should be included in his tax liability for 2005 as a specific item that was not recorded in his corporate bank account, and thus, one which was not included in his tax liability computation by his tax preparers. As noted in the attached affidavit to this sentencing memorandum, the loss from including this amount for purposes of his tax liability is $98,262. (*See Affidavit of Special Agent Rowena Schuch, attached as Exhibit A.*)

In addition to Kado, Marc Cunningham and James Rosendall also testified to being pressured by Bernard or Kwame Kilpatrick to give money to Bernard Kilpatrick in order to obtain or keep business with the City of Detroit. For example, Marc Cunningham, a consultant and friend of Kilpatrick, testified that he paid cash to Bernard Kilpatrick at Kilpatrick's direction, in order that Kilpatrick would support investments for the retirement system and pension funds. (*Tr. of Jury Trial, Testimony of Marc Cunningham, Vol. 55, 12/21/12, at 29-33, 139-140.*)

6

In addition, James Rosendall, a former Vice President of Business Development for Synagro Technologies, Inc., testified that he gave money to Bernard Kilpatrick because Synagro was interested in taking over a contract with the City of Detroit to handle its wastewater sludge. Rosendall described how he went to the Manoogian Mansion and met with Kwame Kilpatrick who told Rosendall: "This is the guy I want you to work with." Rosendall reasonably interpreted this to mean that he needed to pay Bernard Kilpatrick.  (*Tr. of Jury Trial, Testimony of James Rosendall, Vol. 65, 1/17/13, at 37-39.*)

Rosendall made payments to Bernard Kilpatrick, totaling at least $25,000 in cash and checks, out of fear that if he did not, Bernard Kilpatrick would use his influence over Kwame Kilpatrick and other city officials to slow down or terminate the city's proposed contract with Synagro.  On December 20, 2007, after Rosendall had not paid Bernard Kilpatrick money to which Bernard Kilpatrick believed he was entitled, Bernard Kilpatrick met with Rosendall in a parking lot in Detroit and threatened that "we" would "kill" the Synagro contract if Bernard Kilpatrick was not compensated to his satisfaction.  In an effort to temporarily pacify Bernard Kilpatrick,

Rosendall gave Bernard Kilpatrick about $300 in cash, hidden in a pack of chewing gum, as well as half a case of champagne for Kwame Kilpatrick.  (*Tr. of Jury Trial, Testimony of James Rosendall, Vols. 65, 66, 1/17/13, 1/18/13.*)

As further evidence that Bernard Kilpatrick used the machinery of the city government to force people to pay him, Bernard Kilpatrick had a discussion with Bobby Ferguson, which was introduced into evidence at trial, in which Bernard Kilpatrick asked if they could have Gerard Grant Phillips of the City's Human Rights Department cite the company which was working at the Book Cadillac.  Jim Jenkins, who ran a successful minority-based construction company headquartered in the City of Detroit which employed numerous Detroit residents on high-profile construction projects throughout the city, and who was the general contractor for the reconstruction of the Book-Cadillac Hotel, was also a target of the Enterprise.  As demonstrated at trial, Bernard Kilpatrick and Bobby Ferguson discussed running Jim Jenkins "out of town" on a contract for which Bernard Kilpatrick, through Maestro, had been paid over $222,000 by a company that hauled construction debris.  (*See Gov't Exhs. BCD-12, 13; see also Gov't Exh. BCD-14.*)  This

money represents further evidence of payments to Bernard Kilpatrick to maintain contracts with the City.  (*Gov't Exhs. BKF-6 at 2-4 (summary of payments by Capital Waste to Maestro); BKF-17 at 11 (same)*.)

## SENTENCING GUIDELINE DISPUTES

Defendant's guideline range is determined by beginning with a base level of 16 pursuant to United States Sentencing Guideline (U.S.S.G.) § 2T4.1 for tax fraud, given the amount of tax loss of $98,262.

The tax loss, for convictions for false subscriptions of tax returns, is "the total amount of loss that was the object of the offense." U.S.S.G. § 2T1.1(c)(1).  The commentary further explains that "[i]n determining the amount of tax loss attributable to the offense, the court should use as many methods set forth in subsection (c) and this commentary as are necessary given the circumstances of the particular case." U.S.S.G. § 2T1.1(c)(1), comment n.1.  The guidelines contemplate that the court will make a reasonable estimate based on the available facts.  *See id.*

Bernard Kilpatrick does not dispute that the $180,000 disbursement from his employee pension fund was not included in

9

his tax returns for 2005. According to testimony from Agent Schuch, the tax liability associated with the failure to report that amount would have been payment of an additional $62,212.24.

In addition, the evidence showed that Bernard Kilpatrick accepted $100,000 in cash from Karl Kado, which similarly was not included in his tax returns, since that amount of cash was not reflected in his corporate bank statements (which the court is well-aware from the evidence at trial were the only items provided by Bernard Kilpatrick to his tax preparers in determining his liability). Bernard Kilpatrick also does not dispute that he received this amount of money from Kado in 2005. (*Tr. of Closing Argument by Mr. Shea, Vol. 80, 2/14/13, at 17-18.*) Inclusion of that additional amount would have resulted in a tax liability of over $98,262, as set forth by Agent Schuch in the affidavit attached to this memorandum. Thus, because the tax loss was greater than $80,000, 16 is an appropriate base level offense for the associated tax loss. U.S.S.G. § 2T4.1(F).

There is a specific offense characteristic for a failure to report or to identify the source of income exceeding $10,000 in any year from criminal activity, for which the offense level is increased by two

10

levels. U.S.S.G. § 2T1.1(b)(1). As explained in the commentary, "criminal activity" means "any conduct constituting a criminal offense under federal, state, local, or foreign law." U.S.S.G. § 2T1.1 cmt. 3. Bribery and extortion payments are considered illegal activity. "Sentencing factors are to be determined by a preponderance of the evidence." *United States v. Ross*, 703 F.3d 856, 884 (6th Cir. 2012).

As set forth above, the evidence established by a preponderance of the evidence that the defendant accepted cash, in an amount greater than $10,000, from Kado, who believed he needed to make these payments to the mayor's father in order to maintain his lucrative contracts with the City of Detroit. Kado testified numerous times about how he believed himself to be extorted in making these payments, commenting that: "I am like hostage, you know, like hostage in Iran. You give them this, you get them out. I am hostage at Cobo." (*Tr. of Jury Trial, Testimony of Karl Kado, Vol. 42, 12/3/12, at 41, 48.*) The evidence regarding the pressure Bernard Kilpatrick placed on contractors to make payments to keep their contracts with the city is corroborated by the testimony of Rosendall and Cunningham, who also testified

11

regarding the payments they made to Bernard Kilpatrick, albeit in later years. Thus, a specific offense enhancement applies to increase the offense level by two pursuant to § 2T1.1(b)(1).

Because the defendant went to trial, he is not eligible for a reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and (b).

Thus, the total offense level is 18, and with a criminal history category of I, the resultant guideline range is 27 to 33 months.

## ARGUMENT

Congress has provided, through 18 U.S.C. § 3553(a), the relevant objectives and factors to be considered by sentencing courts in imposing a "sentence sufficient, but not greater than necessary." Those factors are: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need for a sentence to reflect the basic aims of sentencing (including retribution, deterrence, incapacitation, and rehabilitation); (3) the kinds of sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted sentencing

disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need for restitution.

### 1) Nature and circumstances of the offense and background of the defendant

Although the jury deadlocked on the RICO conspiracy charge, Bernard Kilpatrick's tax conviction merits a term of imprisonment. It is a crime that was motivated by greed. Although he still would have enjoyed a handsome profit if he had provided services in exchange for the illicit extortionate payments he received from consultants and contractors, he rarely, if ever, performed work in exchange for the payments, and then failed to report most of that income on his tax returns, including his 2005 tax return. Even though the jury did not reach a verdict with respect to his complicity in the Kilpatrick-Ferguson conspiracy, the Court may consider the evidence introduced by the government during trial under a preponderance standard. That evidence clearly established that Bernard Kilpatrick was paid because he was the mayor's father and those persons who paid him did so to secure contracts with the City of Detroit, and not because of any value Bernard Kilpatrick offered to them.

Bernard Kilpatrick also failed to report an amount that represented almost half of his income for the 2005 year because he presumably did not want to pay his share to the federal government, as other honest taxpayers are required to do.

Although Bernard Kilpatrick, as opposed to his co-defendants, did not have previous encounters with the criminal justice system, his illicit behavior during the time his son was mayor, as shown during the course of trial, should be considered in determining the appropriate sentence. *See* 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."). Kilpatrick flagrantly used his son's position as mayor to elicit more money for himself, for little to no work performed. He was caught on tape threatening to "kill" the Synagro deal if Rosendall did not deliver on adequate compensation for him. He solicited additional payments from Karl Kado in order to persuade the City to pay monies that were due and owing Kado under his contract through Cobo Hall. And he accepted payments

from Marc Cunningham, who had been directed to pay such funds to Bernard by Kwame.

The Court should consider all of the testimony and evidence it heard at trial in determining the sentence Bernard Kilpatrick deserves, but certainly, these facts should be evaluated when assessing the nature and circumstances of the defendant.  At a minimum, it further supports the characterization of Bernard Kilpatrick as an opportunist motivated by a greed for more.

The sentence should reflect the seriousness of his conduct and his disrespect for the law.

### 2) **The need for the sentence to reflect the aims of sentencing**

The Court's sentence should reflect the scope and seriousness of this offense, and the need to promote respect for the criminal laws in the Eastern District of Michigan.  A sentence of imprisonment would assist in serving as a deterrent to others who may be inclined to engage in this kind of fraud.

### 3) **The kinds of sentences legally available**

The statute pursuant to which Bernard Kilpatrick was convicted carries a maximum sentence of three years' imprisonment, a $250,000 fine, or both.

4) **Sentencing guideline range**

As indicated above, the probation department correctly concluded that the appropriate guideline range is 27 to 33 months.

5) **Restitution**

Restitution in the amount of the tax loss of $98,262 is due to the Internal Revenue Service and must be included as part of the sentence.

6) **The need to avoid unwarranted sentencing disparities with other defendants with similar records**

There are no other similarly-situated defendants in this case. All of the defendants who were convicted of similar tax-related crimes, including Karl Kado and Emma Bell, pled guilty and provided substantial assistance, including through testifying at the trial of this case, and received a departure from the guideline range for their cooperation.

7) **Recommendation**

Given the nature and seriousness of the offense, and the need to serve as a deterrent to others, the government is recommending a sentence of imprisonment of between 27 to 33 months. There are no reasons to depart downward from the guideline range of imprisonment of this case. If any departure from his guideline range were contemplated, it should be upward, given the evidence of Bernard Kilpatrick's participation in extortion.

## CONCLUSION

In conclusion, the government requests that the Court render a sentence that would meet the goals Congress set forth in § 3553 that would be "sufficient, but not greater than necessary." In this case, a sentence of between 27 and 33 months imprisonment would meet those goals.

Respectfully submitted,
BARBARA L. MCQUADE
United States Attorney

s/ JENNIFER L. BLACKWELL
s/MARK CHUTKOW
s/MICHAEL BULLOTTA
s/ERIC DOEH
Assistant U.S. Attorneys
211 West Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9100

Dated: October 11, 2013

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 11, 2013, I filed the attached document on ECF which provided notice to the following:

Harold Z. Gurewitz
*Attorneys for Kwame Kilpatrick*

Gerald K. Evelyn
Michael Rataj
Susan Van Dusen
*Attorneys for Bobby Ferguson*

John A. Shea
*Attorney for Bernard Kilpatrick*

<u>s/ Jennifer Blackwell</u>
Jennifer Blackwell
Assistant United States Attorney

Dated: October 11, 2013